CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
3/31/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ALEXANDER SIMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-00027 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| OFFICER D.T. SHIVELY and | ) | By:   Hon. Thomas T. Cullen |
| OFFICER W.C. EASON, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Alexander Sims ("Sims"), who is proceeding *pro se,* filed this civil-rights action asserting claims under 42 U.S.C. § 1983 against Defendants Danville police officers D.T. Shively and W.C. Eason ("Defendants"). Sims claims that Defendants violated his rights when they arrested him for public intoxication after he was asked to leave a casino. The matter is now before the court on the Defendants' motion to dismiss. (*See generally* Mot. to Dismiss, Aug. 4, 2025 [ECF No. 21].) The parties have fully briefed the motion, and it is ripe for deposition. For the reasons stated below, the court will grant Defendants' motion and dismiss this case.

I.    **STATEMENT OF FACTS AND PROCEDRUAL BACKGROUND**

During the evening of June 11, 2023, Sims was patronizing Caesars Virginia, a casino in Danville, Virginia. (*See* Am. Compl. ¶ II.1 [ECF No. 13].) Around 9:58 p.m., casino security determined that Sims was intoxicated and asked him to leave.[1] (*Id.* at ¶ II.5.) After leaving the

---

[1] In a separate civil action, Sims disputes that he was intoxicated and alleges that he was racially profiled and that his removal violated, *inter alia*, 42 U.S.C. § 1981. *See generally Sims v. Caesars Virginia, LLC, et al.*, No. 4:25-cv-00026 (W.D. Va. May 20, 2025).

casino, Sims encountered two Danville police officers—Officer Shively and Officer Eason—and began speaking with Officer Shively. The casino's security cameras and the officers' body-worn camera captured their interaction (*see id.* at ¶ II.2), and Sims specifically states that he relies on this footage for purposes of his Complaint and opposing the Defendant's motion (*see* Pl.'s Notice, July 25, 2025 [ECF No. 18]).[2]

The videos show that Sims remained outside of the casino's entrance for approximately 17 minutes. (Am. Compl. Ex. A [hereinafter "Security Footage"] 16:50–23:25.)[3] The entire time, Sims was swaying and gesticulating with his hands while speaking to and arguing with Caesars's security and Defendants.[4] (*Id.*) Several times during the interaction, Sims thrust his body forward, causing the Caesars's security officers to step back. (*Id.* at 17:30–17:39.)

While outside, Sims told Officer Shively that he had recently been involved in a motorcycle accident and had sustained injuries to his foot, left leg, and right hand. (Am. Compl. ¶¶ II.20, 21.) Sims's right hand was clearly wrapped in a large bandage or splint. (*See* Security Footage 16:50.) While talking to Officer Shively, Sims called his sisters and asked

---

[2] On a Rule 12(b)(6) motion, a court will consider documents attached to the complaint in addition to the allegations in the complaint itself. *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014). If the factual allegations in a complaint conflict with the attached documentary evidence, the evidence in the attachments supersedes the complaint's allegations, provided that neither party contests the authenticity of the attachments. *Id.*; *see also Fayetteville Invs. v. Comm. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("Indeed, in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), . . . the exhibit prevails."). Here, there is no dispute as to the authenticity to the security-camera or body-worn camera videos, as Sims attached both to his Complaint and Defendants have not challenged their authenticity. Therefore, this court will rely on the security-camera and body-camera footage Sims attached to his complaint when analyzing this motion.

[3] The casino security footage Sims labels "Exhibit A" is not the actual footage but rather is a video of the footage on a screen or laptop which someone (presumably Sims) fast forwards, slows down, pauses, and annotates with text.

[4] Although the casino security footage does not have sound, the officers' body-worn camera footage, which Sims asked to be attached to his Amended Complaint (*see* Pl.'s Mot. to Correct & Supplement Filing, July 25, 2025 [ECF No. 18]; Order, July 28, 2025 [ECF No. 20]), confirms this.

them to pick him up from the casino because he believed he should not drive due to the security guard's stated suspicion that he was intoxicated.[5] (Am. Compl. ¶ II.12.)

At approximately 10:10 p.m., Defendants arrested Sims for public intoxication.[6] (*Id.* ¶ II.28.) While attempting to place Sims in handcuffs, Officer Eason grabbed Sims's splinted arm while Officer Shively "knocked" Sims's cellphone out of his hand and attempted to secure his right arm. (*Id.* ¶¶ II.28–30.) Sims alleges that Defendants attempted to kick his injured left foot and that Officer Shively "placed his right arm around Plaintiff's neck" while ordering him to get on the ground. (*Id.* ¶¶ II.31–32.)

The security camera footage provides critical context. That video shows that, although Sims is calm at first, he resisted arrest by twisting his body and attempting to break away from Defendants. (Security Footage 23:37–23:40; *see also* Body-Worn Camera[7] ("BWC") 12:35–13:10.) While he resisted, Officer Shively placed his arm around Sim's neck and shoulders while both Defendants forced Sims forward. As a result, Sims's fingers were briefly trapped between the hood of a car and a windshield wiper blade. (Am. Compl. ¶ II.36.) But Sims again resisted Defendants' attempts to place him in handcuffs by grabbing and holding onto the car's hood. (*Id.* ¶ II.34.) Officer Shively then released Sims's neck and shoulder and drew—

---

[5] Given why he was expelled from the casino, Sims justifiably feared that he would be pulled over for drunk driving if he drove.

[6] The court takes judicial notice that Defendants arrested Sims for public intoxication. *See Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 607 (4th Cir. 2015) (noting that a court may also consider facts outside the pleadings that are subject to judicial notice); *Hillman v. Amazon.com Servs. LLC*, 785 F. Supp. 3d 59, 62 n.1 (D. Md. 2025). Although Sims alleges that he was arrested for his association with two companions who fled the scene of a vehicle accident (Am. Compl. ¶ III.10–11), the Danville General District Court's public records show that he was arrested for public intoxication and resisting arrest without violence, *Commonwealth v. Sims*, Case No. GC23003600-00 (Danville Gen. Dist. Ct. Jun. 14, 2023). Those charges were ultimately dismissed.

[7] Defendants provided footage from the body-worn cameras of both officers, but the court only cites to Eason's footage (with the filename "Sims_Alexander"), although it has considered them both.

but did not deploy—his TASER, placing it against Sims's back. (*Id.* ¶ II.35; *see also* Security Footage 23:40–23:45; BWC 13:05–13:20.) Defendants then regained control over Sims and resumed attempting to place him in handcuffs. (Security Footage 23:45–23:50.)

Once Defendants regained control over Sims, the "situation suddenly de-escalated, and the physical force ceased." (Am. Compl. ¶ II.38.) But while Defendants attempted to maneuver Sims's bandaged arm, he began to resist again, before the officers finally succeeded in handcuffing him. (Security Footage at 25:15–25:40.) Sims then told the officers that he could not walk quickly due to severe foot pain. (Am. Compl. ¶ II.43). Defendants escorted Sims to their police cruiser while Sims resisted the forward movement by leaning backwards, which caused him to stumble while walking. (*See* Security Footage 26:05–26:12.)

Once inside the Defendants' patrol vehicle, Sims requested medical attention while Defendants spoke to a Caesars's security officer. (Am. Compl. ¶ II.45.) Defendants then transported Sims to a parking lot where Sims asked Defendants why they had "stopped in a dark secluded parking lot." (*Id.* ¶ II.48.) Officer Eason replied by asking Sims if he wanted medical attention. (*Id.* ¶ II.49.) In response, Sims refused Officer Eason's offer for medical attention and told Defendants to take him to jail. (*Id.* ¶ II.50.)

## II.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Because Sims is proceeding *pro se*, his Complaint, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Courts must allow a *pro se* complaint to go forward where the complaint is broad and contains a 'potentially cognizable claim' that the plaintiff can later particularize," *Peck v. Merletti*, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999). But the principles requiring generous construction of *pro se* complaint raising civil rights issues are not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* plaintiff must still allege sufficient facts to plausibly state a cause of action in order to survive dismissal under 12(b)(6). *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## III.    <u>DISCUSSION</u>

Sims brought suit in this court on May 20, 2025, and he filed an amended complaint on July 21, 2025.[8] In his amended complaint, Sims asserts claims for excessive force, deliberate indifference to his medical needs, unlawful interrogation, and retaliatory arrest in violation of the First Amendment. He sues both Defendants in their official and personal capacities. (Am. Compl. ¶ III.) In response, Defendants filed the instant motion to dismiss, arguing that Sims failed to state a claim and asserting qualified immunity. Sims filed a response opposing the motion and requesting conversion of the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). Defendants filed a reply, making this matter ripe for disposition.[9]

### A. The Court Will Deny Sims's Motion to Convert the Motion to Dismiss into a Motion for Summary Judgment

As a threshold matter, the court will deny Sims's motion to convert Defendants' motion to dismiss into a motion for summary judgment. The applicable rule states that if, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). But a motion to dismiss does not automatically become a motion for summary judgment simply because a party presents evidence outside of the pleadings. *Finley Lines Joint Protective Bd. Unit 200, Bhd. Ry. Carmen, a Div. of Transp. Commc'ns Union v. Norfolk S. Corp.*, 109 F.3d 993, 996–997 (4th Cir. 1997). To convert a motion to dismiss into a motion for summary judgment, the

---

[8] Sims asserted that his amended complaint was filed as a matter of right under Federal Rule of Civil Procedure. (Am Compl. ¶ I.)

[9] The court dispenses with oral argument because it would not aid in the decisional process.

court must *consider* such evidence. *Id.* at 997. Otherwise, the motion is reviewed under Rule 12(b)(6). *Id.*

In this particular case, conversion is not necessary because Sims incorporated and attached Exhibit A, the Security Camera Footage, and the officers' body-worn camera footage into his pleading. (*See* Am. Compl. ¶ 2; Pl.'s Mot. to Correct & Supplement Filing, July 25, 2025; Order, July 28, 2025.) Accordingly, the court will proceed under Rule 12(b)(6) relying on the Amended Complaint and Sims's attached (and incorporated) exhibits.

### B.  Sims's Claims Against Defendants in Their Official Capacity Fail

Insofar as Sims asserts claims against Defendants in their official capacity, those claims fail. An action against a public employee in his official capacity is equivalent to an action against the individual's public employer. *See, e.g.*, *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Defendants are Danville police officers, meaning a suit against them in their official capacity is actually a suit against the City of Danville. *See, e.g.*, *Smith v. Jennings*, No. 7:22cv588, 2023 WL 3959927 at *3 (W.D. Va. June 12, 2023). Local government entities are not liable under § 1983 for claims proceeding under the theory of *respondeat superior*, *see Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978), meaning the City cannot be liable for any wrongdoing by its employees solely by virtue of employing them. To impose liability on the City, Sims would have to allege the existence of an official policy or custom that caused his constitutional deprivations. *See id.* Sims's complaint contains no such allegation, and therefore his official-capacity claims against Defendants must be dismissed.

### C.  Sims Fails to State a Claim for a Violation of His Constitutional Rights

Sims also brings claims against Defendants in their individual capacities under 42 U.S.C. § 1983. "Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Turmon v. Jordan*, 405 F.3d 202, 204−05 (4th Cir. 2005). In this case, Sims's allegations and the video evidence attached to the complaint fail to allege the violation of any constitutional right.[10]

1.  Sims Fails to State a Claim of Excessive Force

Under the Fourteenth Amendment,[11] a pretrial detainee is protected from excessive force that amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To state an excessive-force claim, a plaintiff must show that the force used against him was used was "objectively unreasonable." *Kinglsey v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The plaintiff must also allege facts that, if true, would show the defendants acted with a "purposeful, a knowing, or possibly a reckless state of mind." *Id.* at 396. Constitutional due process does not provide for liability for merely negligent acts. *Id.*

---

[10] Although Defendants assert qualified immunity, the court is dismissing Sims's action for failure to state a claim. But when examining a claim of qualified immunity, the court begins by "asking whether the facts, '[t]aken in the light most favorable to the [plaintiff],' show that 'the officer's conduct violated a constitutional right.'" *Turmon*, 405 F.3d at 204−05 (quoting *Saucier v. Katz*, 533 U.S. 194, 200−01 (2001)). If the court finds that there is no constitutional violation, then the matter can be dismissed. *Id.* As discussed herein, Sims's allegations (and the video evidence) do not establish any constitutional violation and therefore, as an alternative holding, Defendants would be entitled to qualified immunity on Sims's claims.

[11] Sims brings this claim under both the Fourth and Fourteenth Amendments. "For a pre-trial detainee, the proper standard comes from the Fourteenth Amendment," *Simmons v. Whitaker*, 106 F.4th 379, 387 (4th Cir. 2024), which makes the Fourth Amendment applicable to the states, *Bailey v. United States*, 568 U.S. 186, 192 (2013).

"The test for reasonableness 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)); *see Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016) (reasonableness requires courts to consider the proportionality of the force "in light of all the circumstances"). Courts consider three factors, known as the *Graham* factors, to determine if a government actor used reasonable force: (1) the severity of the suspected crime; (2) the extent to which the suspect poses an immediate threat to the safety of officers or others; and (3) if the suspect actively resists or evades arrest. *Est. of Green*, 696 F. Supp. 3d at 154 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court applies a reasonableness standard that considers, objectively, the facts and circumstances as presented to the officer at the time of the incident. *See Graham*, 490 U.S. at 395–96; *see also Kingsley*, 576 U.S. at 397 (holding that courts should determine objective reasonableness by analyzing what "the officer knew at the time, not with the 20/20 vision of hindsight").

Defendants contend that the force they used to arrest Sims was reasonable and that the facts as alleged, and supplemented by Sims's attached and incorporated videos, are insufficient to state a claim for excessive force. After consideration of the undisputed video evidence,[12] and viewing the facts in the light most favorable to Sims, the court agrees.

---

[12] To the extent that Sims's allegations contradict what is shown on the videos, the videos prevail. *Fayetteville Invs.*, 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails."); *Thornton v. Piedmont Reg'l Jail Auth.*, No. 3:24cv499, 2025 WL 888417, at *1 (E.D. Va. Mar. 21, 2025) ("To the extent the video exhibit contradicts any bare allegation of the Amended Complaint, the former will prevail.").

Considering the first *Graham* factor, Sims was suspected of, and arrested for, public intoxication. Indeed, the various footage shows Sims acting belligerently by talking loudly, frequently cursing,[13] swaying back and forth, and aggressively gesturing to Caesars's security prior to his arrest. (Security Footage 20:21–23:24; *see generally* BWC 00:30–12:12.) Under the circumstances presented, the officers acted reasonably in placing Sims in custody.

Considering the second *Graham* factor, although Sims did not appear to pose a severe or deadly threat to the officers, he did pose a low—but not insubstantial—risk to both the officers and innocent bystanders. Although Sims's apparent injuries may have moderated his capacity to inflict harm, the video evidence establishes that they did not incapacitate him or otherwise interfere with his ability to walk, stand, or forcefully resist arrest. Indeed, Sims was able to engage in physically belligerent behavior *despite* his injuries. (Security Footage 20:21–23:24; BWC at 12:21–14:40.) Thus, Defendants acted reasonably when they grabbed his arms and escorted him off the sidewalk and into the parking lot to place him in handcuffs.

Finally, the third *Graham* factor supports the conclusion that Defendants used only reasonable force to effect Sims's arrest. Analyzing the arrest in totality, it began uneventfully when Officer Shively told Sims he was under arrest. (Am. Compl. ¶ II.28.) Defendants then secured Sims and escorted him forward, attempting to move him off the sidewalk. (Security Footage 23:20–23:25.) But Sims failed to comply and escalated the situation when he resisted

---

[13] *See* BWC 09:09–09:11 ("I only had that fucking shit for two days, yo."); 09:58–10:02 (telling Office Eason he was "not trying to be a dickhead"); 10:05–10:06 ("I'm calling my fucking sister."); 11:48–11:51 ("Even though there's nothing illegal, they got shook and fucking left."); 11:56–12:00 ("Shit, I came to the casino to win some money. Shit, I'm about to get that shit . . . ."); 12:28–12:35 (calling Officer Eason a "fucking dickhead" and a "dumb motherfucker"); 14:34–14:36 (telling one of the officers, "Calm the fuck down, asshole").

by forcefully jerking away, breaking Shively's hold on his arm, and nearly escaping Eason's grip. (*Id.* at 23:37–23:40.)

Although "reflexive, or 'automatic,' resistance is not uncommon [and] should be anticipated by police officers," *M.Y.M. by and through Portillo v. Chavis*, 582 F. Supp. 3d 323, 339 (E.D. Va. 2022), the undisputed footage confirms that Sims went well beyond that. Sims broke the officers' hold on his arms, which in turn forced Defendants to stagger and nearly allowed Sims to break free. (Security Footage 23:37–23:40.) In response, Shively briefly placed his arm around the back and right side of Sims's neck,[14] then moved the same arm to his shoulder. (Security Footage 23:40–23:43.) All the while, Sims was cursing and pulling away, and while he continued to struggle, Officer Shively drew—but did not deploy—his TASER and moved Sims forward (*Id.* at 23:50–23:55). Once Sims stopped resisting, Officer Shively holstered his TASER. (Security Footage 23:40–23:45; BWC 13:11–13:15.) Defendants then made a second attempt to handcuff Sims, but, again, he resisted their efforts. (Security Footage 24:17–22.) And then, while the officers attempted to secure Sims's bandaged arm, Sims initiated a slight struggle by leaning over his cellphone. (*Id.* at 25:15–25:40.)

All told, these facts conclusively establish that Defendants used minimal and commensurate force to subdue Sims after he was placed under arrest. It is "well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002). The

---

[14] Sims's complaint describes this action as a "choke hold." (Am. Compl. ¶ II.33.) But the video evidence contradicts Sims's allegation. (Security Footage 23:40–23:43.)

application of the *Graham* factors shows that the officers used objectively reasonable force to arrest Sims, and as a result the court will dismiss Count I for failure to state a claim.

2.  Sims Fails to State a Claim of Deliberate Indifference to Medical Needs

As to Sims's second claim, Defendants argue that Sims has failed to allege a serious medical need or that Defendants were deliberately indifferent to that need. The court agrees.

As noted above, at the time of the incident, Sims was a pre-trial detainee, and therefore the Fourteenth Amendment governs his claim. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To successfully state a claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment, a plaintiff must allege that:

> (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). Under the standard set forth in *Short*, a plaintiff must "show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015)). Alleging simple negligence is "not enough." *Id.* at 612.

Taking the arguments in turn, Defendants first contend that Sims's injuries do not meet the threshold requirement of being a serious medical need—that is, one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Such a need involves a condition that places the inmate at a

substantial risk of serious harm, usually loss of life or permanent disability; a condition for which lack of treatment perpetuates severe pain also presents a serious medical need." *Rakes v. Sw. Va. Reg'l Jail*, No. 7:08-CV-00496, 2008 WL 4461996, at *1 (W.D. Va. Oct. 3, 2008).

There is no doubt that Sims had recently been injured and treated for his injuries. He had a splint on his right arm and had indicated to Defendants he had an injured left foot. (Am. Compl. at ¶¶ 17, 21, 28, 32.) But, as Sims must admit, his injuries were already treated, and his Complaint is devoid of additional allegations that would indicate to a reasonable observer that he needed immediate medical treatment, let alone for a life-threatening condition. Accordingly, he does not allege a serious medical need.

Furthermore, Sims's allegations show that Defendants acted reasonably in response to his condition. After the arrest, Sims requested medical attention and, in response, Defendants stopped their patrol car in a parking lot and offered him medical attention. (*Id.* ¶¶ II.45–46.) By his own admission, Sims *refused* the offer and instead asked Defendants to take him to jail. (*Id.* ¶ II.50.) Notably, he does not allege that he *ever* informed the officers that he was in severe pain, nor does not claim that he suffered further injuries because of—or that his existing injuries were exacerbated by—his arrest. Sims, in short, has failed to state a claim for deliberate indifference to a serious medical need, and the court will dismiss Count II.

3. Sims Fails to State a Claim of False Arrest

Defendants contend that Sims fails to state a claim for false arrest because, taking the facts in the Complaint as true—including the security and body-worn camera video footage—a reasonable officer would believe that probable cause exited to arrest Sims for public intoxication. Again, the court agrees.

- 13 -

To successfully assert a claim of false arrest under the Fourth Amendment, a plaintiff must allege facts to demonstrate he was seized without probable cause. *English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024). Probable cause exists when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Id.* "The court analyzes the facts known to the arresting officers 'to determine whether they provide a probability on which reasonable and prudent persons would act,' disregarding the subjective beliefs of the officers as to whether they believed the facts established probable cause." *Trail v. Cressell*, 494 F. Supp. 3d 349, 357 (W.D. Va. 2020) (quoting *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017)).

Under Virginia Law, it is a Class 4 misdemeanor for any person to be "intoxicated in public." Va. Code Ann. § 18.2-388. "'Intoxicated' means a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance, or behavior." *Id.* § 4.1-100. Virginia law defines the phrase "in public" as "a place in open view, visible to the community." *Crislip v. Commonwealth*, 554 S.E.2d 96, 98 (Va. App. Ct. 2001).

The facts, as alleged and as depicted in the relevant footage Sims relies on, establish that Defendants had probable cause to arrest Sims for public intoxication.

First, Defendants could reasonably suspect that Sims had consumed alcohol because they knew that Caesars' security had ejected him from the casino for being "too intoxicated." (Am. Compl. ¶ II.5.) Defendants then spent several minutes talking with Sims on the sidewalk, and they were able to observe his belligerent behavior, cursing, and his unsteadiness on his

feet and swaying back and forth. (Security Footage 20:21–23:24; BWC 00:30–12:20.) Presented with this scenario, any reasonable officer would conclude that Sims was intoxicated or, at a minimum, that there was probable cause to believe that he was. Because the footage Sims relies on conclusively establishes that there was probable cause for his arrest, Count III will be dismissed.

### 4.  Sims Fails to State a Claim for Failure to Provide Proper *Miranda* Warnings

The court will also dismiss Count IV, failure to provide proper *Miranda* warnings. Sims contends that, at the time of his arrest, Defendants failed to advise him of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). The remedy for failure to provide a proper *Miranda* warning is exclusion of improperly obtained testimony at a criminal trial. *Vega v. Tekoh*, 597 U.S. 134, 152 (2022). Thus, Sims cannot recover under § 1983 for failure to provide a proper *Miranda* warning. *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (noting that the "failure to read *Miranda* warnings . . . did not violate [the defendant's] constitutional rights and cannot be grounds for a § 1983 action").

### 5.  Sims Fails to State a Claim of Retaliatory Arrest

The First Amendment forbids government officials from retaliating against citizens for exercising their right to free speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). To prevail on a claim for retaliatory arrest, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). But "it is not enough to show that an official acted with a retaliatory motive." *Nieves*, 587 U.S. 398–99. Instead, the retaliatory animus "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken

absent the retaliatory motive." *Id.* Thus, a plaintiff generally must establish the absence of probable cause to bring a claim of retaliatory arrest for protected speech against an individual.[15] *Nieves*, 587 U.S. at 400–401; *see Nazario v. Gutierrez*, 103 F.4th 213, 237 (4th Cir. 2024) (holding that the existence of probable cause in First Amendment retaliation cases "resolves the causation inquiry of the retaliation claim" in the defendant's favor); *Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017) ("The probable cause inherent in [the plaintiff's arrest] also defeats his First Amendment retaliatory arrest claim.").

As discussed above, Defendants had probable cause to arrest Sims for public intoxication. Therefore, Sims's claim for retaliatory arrest fails.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 31st day of March, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[15] The Supreme Court has held that a plaintiff can bring a claim for retaliatory arrest against a municipality, even when probable cause existed for the arrest, if the arrest occurred pursuant to a municipal policy of retaliating for prior protected speech. *See Lozman v. Riviera Beach*, 585 U.S. 87, 98–101 (2018). But a year later, the Supreme Court held that *Lozman* did not extend to First Amendment retaliatory arrest claims against individuals. *See Nieves*, 587 U.S. at 400–01. And, as noted above, *supra* § III.B, Sims has failed to allege the existence of a policy of custom sufficient to state a claim against the City of Danville.